1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BRENDA DEE BAKER RIOJAS,                    Case No.  1:24-cv-0688-HBK

12                    Plaintiff,                  ORDER REMANDING CASE TO
                                                  COMMISSIONER OF SOCIAL SECURITY[1]
13            v.
                                                  (Doc. Nos. 18, 23)
14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                      Defendant.
16

17

18          Brenda Dee Baker Riojas ("Plaintiff") seeks judicial review of a final decision of the

19    Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

20    supplemental security income and disability insurance benefits under the Social Security Act.

21    (Doc. No. 1).  The matter is currently before the undersigned on the parties' briefs, which were

22    submitted without oral argument.  (Doc. Nos. 18, 23).  For the reasons set forth more fully below,

23    the Court remands the matter to the Commissioner of Social Security for further administrative

24    proceedings.

25                           I.      JURISDICTION

26          Plaintiff protectively filed for supplemental security income and disability insurance

27    _____

28    [1]  Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
      §636(c)(1).  (Doc. No. 6).

benefits on September 24, 2009, alleging a disability onset date of March 15, 2008.  (AR 140-54).

Benefits were denied initially (AR 73-77) and upon reconsideration (AR 81-87).  Plaintiff

appeared for a hearing before an administrative law judge ("ALJ") on September 12, 2011.  (AR

39-66).  Plaintiff testified at the hearing and was represented by counsel.  (*Id*.).  The ALJ denied

benefits (AR 16-38) and the Appeals Council denied review (AR 1-5).

On July 21, 2014, the United States District Court for the Eastern District of California

remanded to the Commissioner for further administrative proceedings.  (AR 983-99).  On

December 19, 2014, the Appeals Council vacated the ALJ's finding and remanded for further

administrative proceedings including the opportunity for a new hearing.  (AR 979-82).  On July

15, 2015, Plaintiff appeared for a second hearing before an ALJ.  (AR 914-49).  Plaintiff was

represented by counsel and testified at the hearing.  (*Id*.).  On October 21, 2015, the ALJ issued

an unfavorable decision.  (AR 1139-70).  On December 23, 2016, the Appeals Council remanded

for further administrative proceedings including the opportunity for a new hearing.  (AR 1132-

38).  On March 30, 2017, Plaintiff appeared for a third hearing before an ALJ.  (AR 950-78).

Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  On January 24, 2018, the

ALJ issued an unfavorable decision.  (AR 1171-1202).  On April 12, 2019, the Appeals Council

remanded again for further administrative proceedings including the opportunity for a new

hearing.  (AR 1203-08).  On October 31, 2019, Plaintiff testified at a fourth hearing before an

ALJ.  (AR 883-913).  On February 26, 2020, the ALJ issued a partially favorable decision finding

Plaintiff became disabled after April 24, 2015.  (AR 1216-57).  On September 19, 2022, the

Appeals Council remanded again for further administrative proceedings including the opportunity

for a new hearing.  (AR 1209-15).  On December 5, 2023, Plaintiff appeared for a fifth hearing

before an ALJ.  (AR 852-82). She was represented by counsel and testified at the hearing.  (*Id*.).

On March 25, 2024, the ALJ issued a partially favorable decision finding Plaintiff became

disabled after December 8, 2014.  (AR 803-51).  The matter is before the Court under 42 U.S.C. §

405(g) and 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

At the time of the most recent December 2023 hearing, Plaintiff was 48 years old.  (*See* AR 212).  She completed twelfth grade.  (AR 860).  She lives alone.  (AR 860).  She has no past relevant work.  (AR 860, 871).  Plaintiff testified the "major things" making it difficult for her to work during the relevant period were standing, lifting, migraines, anxiety, and inability to "feel" her arm and legs.  (AR 861).  She reported that over the course of the last 15 years, her ability to use her arms and legs has changed dramatically, and since her neck surgery in 2017 she cannot feel her hand or lift her arms "half the time."  (AR 861).  After the 2017 surgery, her pain and symptoms worsened, and even before surgery she was constantly dizzy and had extreme pain.  (AR 862-63). Plaintiff testified that around 2010 she was dizzy, dropping things, and had chronic headaches and blurred vision.  (AR 864).  From 2010 to 2017 things went "downhill" and things "especially" changed for the worse after the 2017 surgery.  (AR 864).  She reported her mental functioning has declined during the past 10 to 15 years.  (AR 864-65).  Plaintiff testified she has tachycardia which has been getting worse over time; and injections in her back, neck, and knees made her symptoms worse.  (AR 867-68).  She reported she has not been able to move her neck since her date of injury, and after surgery her neck has been "stuck."  (AR 868).

### III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

1   In reviewing a denial of benefits, a district court may not substitute its judgment for that of

2   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

3   to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

4   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

5   harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

6   nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

7   decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

8   U.S. 396, 409-10 (2009).

9   **IV.    SEQUENTIAL EVALUATION PROCESS**

10  A claimant must satisfy two conditions to be considered "disabled" within the meaning of

11  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

12  activity by reason of any medically determinable physical or mental impairment which can be

13  expected to result in death or which has lasted or can be expected to last for a continuous period

14  of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the

15  claimant's impairment must be "of such severity that he is not only unable to do his previous

16  work[,] but cannot, considering his age, education, and work experience, engage in any other kind

17  of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

18  1382c(a)(3)(B).

19  The Commissioner has established a five-step sequential analysis to determine whether a

20  claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

21  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§

22  404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity,"

23  the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b),

24  416.920(b).

25  If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

26  two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

27  C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or

28  combination of impairments which significantly limits [his or her] physical or mental ability to do

4

basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis

5

1   concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20

2   C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

3        The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180

4   F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

5   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

6   work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2),

7   416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

8                          **V.   ALJ'S FINDINGS**

9        At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

10  since alleged onset date.  (AR 811).  At step two, the ALJ found that since the alleged onset date

11  of disability, March 15, 2008, Plaintiff has the following severe impairments: degenerative disc

12  disease of the cervical and lumbar spine; obesity; carpal tunnel syndrome; asthma; depression;

13  and anxiety.  (AR 811).  At step three, the ALJ found that since March 15, 2008, Plaintiff does

14  not have an impairment or combination of impairments that meets or medically equals the

15  severity of a listed impairment.  (AR 812).  The ALJ then found that prior to December 8, 2014,

16  the date Plaintiff became disabled, Plaintiff had the RFC to

17
18          perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
            except the claimant was occasionally able to climb ramps and stairs,
            and never able to climb ladders, ropes and/or scaffolds.  The claimant
19          was occasionally able to reach overhead, bilaterally.  The claimant
            should not work in environments subjecting her to concentrated
20          exposure to respiratory irritants such as gases, dust, smoke and/or
            fumes, or which would expose her to unprotected heights or
21          machinery with dangerous, moving mechanical parts.  The claimant
            was able to perform jobs of a non-complex nature requiring the
22          performance of no more than simple, routine tasks.

23  (AR 814).  Next, the ALJ found that beginning on December 8, 2014, Plaintiff has the RFC to

24          perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
            except the claimant is occasionally able to climb ramps and stairs,
25          and never able to climb ladders, ropes and/or scaffolds.  The claimant
            is occasionally able to balance, crawl, crouch, kneel and stoop, and
26          is occasionally able to reach overhead, bilaterally.  The claimant
            should not work in environments subjecting her to concentrated
27          exposure to respiratory irritants such as gases, dust, smoke and/or
            fumes, or which would expose her to unprotected heights or
28          machinery with dangerous, moving mechanical parts.  The claimant

                                        6

1

2

3

> is able to perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks.  The claimant would be able to occasionally reach in all directions and would be off task from work-related duties and assignments for 15% of an 8 hour workday.

4    (AR 828).  At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 831).  At

5    step five, the ALJ found that prior to December 8, 2014, considering Plaintiff's age, education,

6    work experience, and RFC, there were jobs that exist in significant numbers in the national

7    economy that Plaintiff could have performed, including marker, housekeeping, cleaner, and

8    automatic car wash attendant.  (AR 832).  However, beginning on December 8, 2014, considering

9    Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant

10   numbers in the national economy that Plaintiff can perform.  (AR 833).  On that basis, the ALJ

11   concluded that Plaintiff was not disabled prior to December 8, 2014, but became disabled on that

12   date and has continued to be disabled through the date of the decision.  (AR 833).  Further, the

13   ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act,

14   at any time through December 31, 2012, the date last insured.  (AR 833).

15                                        **VI.    ISSUES**

16          Plaintiff seeks judicial review of the Commissioner's final decision denying her

17   supplemental security income benefits under Title XVI of the Social Security Act and disability

18   insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the

19   following issue for this Court's review: whether the ALJ properly considered the medical opinion

20   evidence.  (Doc. No. 18 at 10-29).

21                                      **VII.    DISCUSSION**

22          **A.  Medical Opinions[2]**

23          There are three types of physicians: "(1) those who treat the claimant (treating

24   physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3)

25   those who neither examine nor treat the claimant [but who review the claimant's file]

26   _____

27   [2] For claims filed on or after March 27, 2017, new regulations changed the framework for evaluation of medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. As Plaintiff's claims were filed on

28   September 24, 2009, the medical evidence is evaluated under the prior regulations.

(nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.*  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ failed to properly consider the medical opinions of Robert Graham, M.D., Craig R. MacClean, M.D., Peter Mendelsohn, M.D., Diego Allende, D.O., and Abel Quesada, M.D.  (Doc. No. 18 at 10-28).

### 1.  Robert Graham, M.D.

On June 16, 2015, Plaintiff's treating physician Dr. Robert Graham provided a physical RFC medical source statement opining that Plaintiff could lift less than 5 pounds occasionally, 10 pounds rarely, and never 15 pounds or more; carry less than 5 pounds occasionally, 5 pounds rarely, and never 10 pounds or more; sit less than one hour in an 8-hour workday or about 6 hours with changes in position; stand and walk about one hour in an 8-hour workday; lie down or recline for about 2 hours in an 8-hour workday; take unscheduled breaks every 2 hours for 5-10 minutes; use her upper extremities for grasping, turning, twisting, and fine manipulations 10% of an 8-hour workday; reach bilaterally, including overhead, for 5% of an 8-hour workday; and never climb stairs, ladders, scaffolds, ropes and ramps.  (AR 2390-92).  Dr. Graham also opined that pain would frequently interfere with attention and concentration needed for Plaintiff to perform simple work tasks; she would be "off task" more than 30% of an 8-hour workday; she

1    would be absent from work due to her impairments 5 days or more per month; she would be

2    unable to complete an 8-hour workday 5 days or more per month due to her impairments; and she

3    would be efficient in performing a job 8 hours per day, 5 days per week, on a sustained basis 50%

4    or less compared to an average worker.  (AR 2392-93).

5          On March 20, 2017, Dr. Graham provided an additional physical RFC medical source

6    statement opining that Plaintiff could lift and/or carry 5 pounds or less occasionally, 10-15

7    pounds rarely, and never 20 pounds or more; sit about 5 hours in an 8-hour workday; stand and

8    walk less than one hour in an 8-hour workday; lie down or recline for about 1 hour in an 8-hour

9    workday; take unscheduled breaks every 3 days per week for 1-2 hours at a time; use her hand to

10   grasp, turn, and twist objects 60% of an 8-hour workday; use her right fingers for fine

11   manipulations 50% of an 8-hour workday; and reach, including overhead, with her right arm 10%

12   of an 8-hour workday; use her left hand to grasp, turn, and twist objects 20% of an 8-hour

13   workday; use her left fingers for fine manipulations 20% of an 8-hour workday; never use her left

14   arm to reach, including overhead; and never climb stairs, ladders, scaffolds, ropes, and ramps.

15   (AR 2863-65).  Dr. Graham also opined that pain would constantly interfere with attention and

16   concentration needed for Plaintiff to perform simple work tasks; she would be "off task" more

17   than 30% of an 8-hour workday; she would be absent from work due to her impairments 5 days or

18   more per month; she would be unable to complete an 8-hour workday 5 days or more per month

19   due to her impairments; and she would be efficient in performing a job 8 hours per day, 5 days

20   per week, on a sustained basis 50% or less compared to an average worker.  (AR 2865-66).

21   Notably, Dr. Graham opined that these limitations had existed since 2009.  (AR 2863).

22         The ALJ considered Dr. Graham's opinions jointly and gave them "some weight" because

23   they are "not supported by the overall record as of the established onset date, as the record

24   suggests the claimant exhibited a strong gait prior to the established onset date and strength and

25   neuro were full.  These opinions suggest greater upper extremity impairment at an earlier period

26   of time which is inconsistent with the record and testimony."  (AR 826 (citing AR 2091, 5381)).

27   An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a

28   whole, or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1195 (9th Cir. 2004); *see also Orn*, 495 F.3d at 631 (the consistency of a medical opinion with the

record as a whole is a relevant factor in evaluating that medical opinion).  Plaintiff notes that the

ALJ relies solely on two emergency treatment visits to support this finding, one for dizziness and

one for abdominal pain, neither of which were orthopedic in nature; and Plaintiff argues the ALJ

failed to consider the "entirety of the record" in making these findings.  (Doc. No. 18 at 16-17).

Defendant argues the ALJ reasonable discounted Dr. Graham's opinions as inconsistent with

records dated before the established onset date, inconsistent with Plaintiff's testimony, and

inconsistent with each other as they show "an overall improvement in the bilateral upper

extremity function from 2015 to 2017."  (Doc. No. 23 at 8-9).

        As an initial matter, a precise reading of the ALJ's decision indicates he did not reject Dr.

Graham's opinions because they were inconsistent with each other; rather, the ALJ found the

opinions "suggest greater impairment at an earlier period of time which is inconsistent with the

*record* and *testimony*."  (AR 826) (emphasis added); *see Morgan v. Comm'r Soc. Sec. Admin.*,

169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies within a physician's report constitute

relevant evidence when weighing medical opinions).  Thus, the Court is not permitted to consider

any reasoning as to inconsistencies between Dr. Graham's 2015 and 2017 opinions as this was

not offered by the ALJ as a reason to discount Dr. Graham's opinions.  *Bray*, 554 F.3d at 1226

(the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by

the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been

thinking.").

        However, an ALJ may not "cherry-pick[ ]" aspects of the medical record and focus only

on those aspects that fail to support a finding of disability. *Ghanim v. Colvin*, 763 F.3d 1154,

1164 (9th Cir. 2014); *see Holohan*, 246 F.3d at 1207 (faulting the ALJ's selective reliance on

some aspects of the treating records while ignoring other aspects suggestive of a more severe

impairment).  Moreover, when considering the medical opinion evidence, the ALJ must do more

than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why

they, rather than the doctors,' are correct."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998);

*Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the

court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.

Here, the ALJ cites only two records in support of the finding that Dr. Graham's opinions are "not supported by the overall record as of the established onset date," namely: (1) a July 2014 visit to the emergency room for abdominal pain and migraine that noted normal neuro and strength on examination; and (2) a February 2014 visit to the emergency department for dizziness that noted a "strong steady gait."  (*See* AR 2091, 5381).  Moreover, the ALJ offers no evidence from the record to support the finding that Dr. Graham's opinion reflecting greater upper extremity impairment in 2015 than 2017 is inconsistent with the record and Plaintiff's testimony. Defendant cites to several additional treatment records from the relevant adjudicatory period that would tend to support the ALJ's findings, including findings of strong gait, normal range of motion, normal strength, and normal coordination.  (Doc. No. 23 at 8 (citing AR 2471, 2584, 2614, 2775)).  However, the Court's independent review of Plaintiff's testimony indicates she reported a discernable worsening of her impairment after her neck surgery in September 2017, six months after Dr. Graham's March 2017 opinion (AR 3087-88).  (AR 862, 864 ("from the moment of injury it's just kind of decline. Especially … after surgery drastically changed for me."), 868 (reporting she hasn't been able to move her neck since her injury, but "it doesn't do anything since surgery.")).  Moreover, as noted by Plaintiff, treatment records from the adjudicatory period include findings of decreased range of motion, MRI results showing degenerative disc disease of the lumbar and cervical spine, tenderness in the thoracic and lumbar spine, decreased strength, tenderness in the upper extremity, decreased grip, positive Tinel's and Phalen's, and positive straight leg raising.  (Doc. No. 18 at 12-16 (citing AR 2133-35, 2151, 2153, 2161, 2167 (noting difficulty straightening spine due to pain), 2390, 2561, 2816, 2829, 2834, 2845-46, 2853-54, 2858, 2862)).  Based on the foregoing, the ALJ's general findings that Dr. Graham's opined

1     limitations are unsupported by the "overall record," and the greater upper extremity impairment at

2     an earlier period of time is inconsistent with the record and testimony, are not specific and

3     legitimate reasons, supported by substantial evidence, to give Dr. Graham's opinions only "some

4     weight."

5               **2.  Craig R. MacClean, M.D.**

6        In March 2007, Dr. MacClean completed an Agreed Medical Examiner examination in the

7     context of Plaintiff's workers compensation claim, wherein he opined that Plaintiff was

8     temporarily totally disabled, and he anticipated she would reach maximum medical improvement

9     in 6 to 8 weeks.  (AR 2413).  The Court finds the ALJ properly discounted Dr. MacClean's

10    March 2007 opinion as the conclusion that Plaintiff is "disabled" or unable to work is a matter

11    reserved to the Commissioner of Social Security.  The regulations are clear that the

12    Commissioner is "responsible for making the determination or decision about whether you met

13    the statutory definition of disability.... A statement by a medical source that you are 'disabled' or

14    'unable to work' does not mean that we will determine that you are disabled."  20 C.F.R. §§

15    404.1527(d)(1), 416.927(d)(1); *see also* §§ 404.1527(d)(3), 416.927(d)(3) ("[w]e will not give

16    any special significance to the source of an opinion on issues reserved to the Commissioner.").

17       In October 2009, Dr. MacClean opined that Plaintiff was limited to lifting no more than

18    10 pounds and no repetitive bending or stooping.  (AR 367 (noting his opinions "remain

19    unchanged")).  The ALJ gave this little weight "as, by its nature, [i]t was a temporary limitation

20    and does not represent the claimant's overall capacity during the period at issue."  (AR 823).  To

21    be found disabled, a claimant must be unable to engage in any substantial gainful activity due to

22    an impairment which "can be expected to result in death or which has lasted or can be expected to

23    last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also*

24    *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).  However, as noted by Plaintiff, "[i]n

25    California workers' compensation parlance, a 'period of temporary total disability' means 'that

26    period when the employee is totally incapacitated for work and during which he may reasonably

27    be expected to be cured or materially improved with proper medical attention.'"  (Doc. No. 8 at

28    24 (citing *W.M. Lyles Co. v. Workmen's Comp. Appeals Bd.*, 3 Cal. App. 3d 132, 136 (1969)).

1    "Despite the differences between workers' compensation and Social Security work categories, an

2    ALJ 'may not disregard a physician's medical opinion simply because it was elicited in a state

3    workers' compensation proceeding, or because it is couched in terminology used in such

4    proceeding.'" *Holmes v. Astrue*, 2011 WL 2837698, at *4 (C.D. Cal. July 15, 2011) (citing *Booth*

5    *v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2022).  Moreover, as noted by Plaintiff, in his

6    October 2009 "Orthopaedic AME Supplemental Report," Dr. MacClean states his opinions

7    limiting Plaintiff lifting 10 pounds and no repetitive bending and stooping "remain unchanged"

8    regarding the issue of impairment as previously detailed in his December 2007 evaluation.  (AR

9    366-67).  Thus, rejecting Dr. MacClean's opinion solely based on the purported "temporary"

10   nature of the opined limitations is not supported by substantial evidence.

11       In August 2010, Dr. MacClean again notes his opinion "remain unchanged" from the

12   October 2009 progress report that Plaintiff is temporarily partially disabled for the cervical spine,

13   i.e. no repetitive twisting of the head and neck, and no repetitive overhead use of the left upper

14   extremity."  (AR 624).  The ALJ found Dr. MacClean's "recommended limitations" as to the

15   upper extremity were "overly restrictive" because (1) they were inconsistent with his own

16   examination findings, (2) Plaintiff refused the recommended treatment, and (3) any assertion that

17   Plaintiff cannot work is a matter reserved to the Commissioner of Social Security.  (AR 824).

18   First, as noted above, the ALJ is not required to give any special significance to a medical

19   source's statement about Plaintiff's ability to work, as that is an issue reserved to the

20   Commissioner.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

21       Second, an ALJ may properly reject a medical opinion if it is inconsistent with the

22   provider's own treatment notes.  *Tommasetti*, 533 F.3d at 1041.  In support of this finding, the

23   ALJ noted that Dr. MacClean observed range of motion of Plaintiff's head and neck is somewhat

24   limited in the flexion, extension and rotation to the left; full and normal range of motion in upper

25   extremities except for limitation with the left shoulder; no tenderness in either elbow; negative

26   Tinel's sign; negative Finkelstein's test on the right; Finkelstein's test on the left presented with

27   complaints of pain in the left shoulder and neck; when performing Phalen's Plaintiff immediately

28   remarked it caused her fingers to go to sleep; and grip strength was 30 pounds on the right and 24

pounds on the left.  (AR 622-23, 824).  As noted by the ALJ, Dr. MacClean diagnosed cervical

strain with radiation to the left shoulder, doubt radiculopathy and history of positive NCV study

for right carpal tunnel syndrome.  (AR 623, 824).  However, the ALJ fails to explain why

"recommended limitations" of no repetitive twisting of the head and neck and no repetitive

overhead use of the left extremity are "overly restrictive" when compared with Dr. MacClean's

abnormal examination findings that pertain mostly to the head, neck, and left upper extremity,

including limited range of motion, tenderness located just posterior and inferior to the mastoid

process on the left, complaints of pain on the left shoulder and neck, and more limited grip

strength on the left side.  (AR 622-23); *Reddick*, 157 F.3d at 725 (when considering medical

opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth

his own interpretations and explain why they, rather than the doctors,' are correct."); *Brown-*

*Hunter*, 806 F.3d at 495.

      Third, the ALJ found Dr. MacClean "did not assert any other underlying etiology, beyond

a 'strain with radiation to the left shoulder'" and Dr. MacClean

> notes that the claimant would 'definitely' benefit from a particular
> course of therapy for her complaints, but the claimant refused.  Not
> only does a 'strain' suggest the symptoms are not some permanent
> condition, but the course of treatment also suggests the symptoms are
> [sic] would very likely respond to conservative treatment, that is, the
> upper extremity complaints and complaints of pain originating from
> her neck may be relieved with a nerve block, acupuncture, and
> physical therapy.  Dr. MacClean does not suggest the neck and
> shoulder issues warrant surgical intervention.  Nonetheless, the
> claimant refused the recommended treatment.  The evidence shows
> that the claimant was aware of a reasonable treatment plan that her
> physician determined would likely resolve her complaints.  This
> treatment plan is clearly expected to restore the claimant's ability to
> use her left upper extremity without pain.  The claimant did not have
> an acceptable reason for failure to follow prescribed treatment
> pursuant to 20 C.F.R. 416.930, but simply refused it without
> justification.  Not only does this refusal of treatment suggest the
> claimant's complaints were not very concerning to her at the time of
> the evaluation, choosing to forego appropriate treatment does not
> justify a 'disability' status under the Regulations.

(AR 824).  Pursuant to 20 C.F.R. § 416.930(a), "[i]n order to get benefits, you must follow

treatment prescribed by your medical source(s) if this treatment is expected to restore your ability

to work."  Plaintiff argues the ALJ's finding that the treatment plan recommended by Dr.

14

MacClean was "clearly expected to resolve her complaints" and "restore the claimant's ability to use her left upper extremity without pain" was "not evidenced in the record." (Doc. No. 18 at 23). The Court agrees. While Dr. MacClean did opine that Plaintiff would "definitely benefit" from epidural steroid injections and it "*may* resolve her headaches, neck pain, and left shoulder complaints," he did not find the prescribed treatment would restore Plaintiff's ability to work, nor did the ALJ make that finding on the record. (*Id.*). Similarly, the ALJ does not cite to any medical evidence in the record to support the reasoning that Dr. MacClean's diagnosis of a "cervical strain" is "not some permanent condition" and would "very likely respond to conservative treatment." The Court also notes that the record does not include any "refusal" by Plaintiff regarding Dr. MacClean's recommendation that acupuncture treatment and general range of motion exercises under the supervision of a therapist should be "authorized," nor does the ALJ offer any specific reasoning as to why the Dr. MacClean's opined limitations as to Plaintiff's head, neck, and upper left extremity should be discounted based on his own acknowledgment that Plaintiff "does not desire any lumbar epidural steroid injections." *Cf. Orn*, 495 F.3d at 638 (unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an *adverse credibility finding* unless there is a showing of a good reason for the failure) (emphasis added). Finally, regardless of any error in considering Plaintiff's "refusal" to undergo epidural steroid injections at this visit with Dr. MacClean, this reason, standing alone, does not rise to the level of substantial evidence to entirely discount Dr. MacClean's August 2010 opinion as to Plaintiff's head, neck, and left upper extremity.

For all of these reasons, the ALJ failed to properly consider Dr. MacClean's October 2009 and August 2010 opinions, and those opinions should be reconsidered on remand along with all relevant medical evidence and progress reports by Dr. MacClean.

### 3. Peter Mendelsohn, M.D.

In February 2011, Dr. Mendelsohn completed a "Primary Treating Physician's Impairment Rating Evaluation" and opined that Plaintiff was able to return to modified work duties of no lifting over 15 pounds and preclusion from heavy lifting (25 pounds) and very heavy lifting (75 pounds), stooping, bending, kneeling, crawling, repetitive arm movements, and

overhead work.  (AR 715).  The ALJ gave his opinion "some weight" for several reasons.[3]  First, the ALJ found the preclusions from stooping, bending, kneeling, and crawling were not supported his own examination findings "showing near full neurological function throughout the bilateral upper and lower extremities."  (AR 818 (citing AR 11)).  An ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes.  *Tommasetti*, 533 F.3d at 1041.  However, as noted by Plaintiff, Dr. Mendelsohn's examination findings also showed tenderness to palpation in occipital region, tenderness on palpation and spasm on cervical spine and positive cervical facet test bilaterally, limited range of motion on cervical spine with dizziness, decreased grip bilaterally with inability to obtain grip strength on the right, tenderness to palpation in the lumbosacral spine, positive lumbar facet test bilaterally, positive straight leg test, limited range of motion for the lumbosacral spine, and 4/5 strength throughout the lower extremities.  (Doc. No. 18 at 25 (citing AR 709-11)).  Aside from a general reference to the "normal" neurological function, the ALJ fails to consider the entirety of Dr. Mendelsohn's examination findings, nor does the ALJ explain with requisite specificity how these findings do not support his opined limitations on stooping, bending, kneeling, and crawling.  *Reddick*, 157 F.3d at 725 (when considering medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors,' are correct.");  *Brown-Hunter*, 806 F.3d at 495.  Thus, this was not a specific and legitimate reason, supported by substantial evidence, to discount Dr. Mendelsohn's opinion.

Defendant notes that the ALJ additionally rejected Dr. Mendelsohn's opinion because (1) it was inconsistent with Plaintiff's subjective reports to Dr. Mendelsohn that she only occasionally experiences paresthesia or weakness in the arms, medications relieve the pain to the neck and back, and she can stand, walk, sit, lift, twist, squat, climb, and kneel, but "not for prolonged periods"; and (2) Dr. Mendelsohn opined that Plaintiff has achieved "maximum benefit

---

[3] Plaintiff appears to contend that the ALJ improperly discredited Dr. Mendelsohn's opinion "based on the ALJ's reading of a subsequent MRI."  (Doc. No. 18 at 26).  However, as argued by Defendant, the ALJ did not rely on the MRI when evaluating the opinion.  (Doc. No. 23 at 19).  Thus, the Court is not permitted to consider this reasoning as it was not offered by the ALJ in the decision. *Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

1   from treatment to her neck and back and has reached a plateau appropriate for evaluation of

2   'permanent impairment', which is "contradicted by" his recommendation for further treatment

3   and medications.  (AR 818-19); *see Morgan*, 169 F.3d at 603 (internal inconsistencies within a

4   physician's report, and conflicts between claimant's testimony and a physician's opinion,

5   constitute relevant evidence when weighing medical opinions).  The Court may decline to

6   consider this reasoning as it was not raised with specificity in Plaintiff's briefing.  *Carmickle v.*

7   *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  Regardless, in light of the

8   need to remand to reevaluate the opinions of Dr. Graham and Dr. Mendelsohn, the ALJ is

9   directed to reconsider Dr. Mendelsohn's opinion on remand.[4]

10                      **4.  Diego Allende, D.O.**

11          Throughout the adjudicatory period, Dr. Allende completed multiple progress reports as to

12   Plaintiff's "work status."  (AR 305 (she has returned back to her modified work duties), 326

13   (same), 335 (she "continues to be relatively active in a modified duty work status" and is

14   "currently doing sitting work only"), 339 (remain off work), 384 (same), 387 (same), 391 (same),

15   396 (she "clearly cannot go back to work"), 446 (remain off work)).  In January 2010, under the

16   heading "subjective complaints," a progress report with Dr. Allende reflects that Plaintiff "will be

17   returning back to modified duty with no repetitive bending, stooping, no lifting greater than 10

18   pounds."  (AR 443).  In February 2010, Dr. Allende stated Plaintiff had been advised to seek

19   work, and did not reference any work-related modifications.  (AR 441).

20          Plaintiff generally argues the ALJ improperly "ignored" Dr. Allende's opinion that

21   Plaintiff is limited to sedentary work and "uses improper rationale to discredit [Plaintiff]" based

22   on her decision not to undergo epidural injections.  (Doc. No. 18 at 20).  As an initial matter,

23   _____

24   [4] Plaintiff "agrees" with the ALJ's finding that "at the time of Dr. Mendelsohn's assessment, she remained
     capable of lifting at least 10 pounds" because it is "consistent with limited sedentary work, not the light
     exertional work" in the assessed RFC.  (Doc. No. 18 at 27 (citing AR 825)).  Defendant argues the ALJ's

25   assessment earlier in the decision stating "at the time of Dr. Mendelsohn's assessment, Plaintiff remained
     capable of lifting 15 pounds" (AR 818) "more clearly reflects what Dr. Mendelsohn's report says, [and]

26   even the second discussion of his report does not limit Plaintiff to lifting no more than 10 pounds, but
     rather says she can lift at least 10 pounds. … Because the Court can discern that the ALJ accepted Dr.

27   Mendelsohn's limitation to 15 pounds, affirmance is warranted."  (Doc. No. 23 at 20).  It is unnecessary
     for the Court to address any purported ambiguity in the ALJ's consideration of Dr. Mendelsohn's opinion

28   in light of the need to remand for reevaluation of the medical opinion evidence identified herein.

1   Defendant argues the ALJ did not err by not addressing Dr. Allende's January 2010 progress

2   report because "he did not offer an assessment as [to] his own opinion about what Plaintiff could

3   do despite her limitations but rather as a summation about what Plaintiff subjectively reported she

4   would be doing." (Doc. No. 23 at 10).  The Court agrees.  The ALJ did not err in failing to

5   specifically discuss and provide reasons for rejecting Dr. Allende's "opinions" because a plain

6   reading of his treatment records indicates he did not assess any functional limitations. *See, e.g.,*

7   *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's

8   report did not assign any specific limitations or opinions in relation to an ability to work, "the

9   ALJ did not need to provide [reasons] for rejecting [the] report because the ALJ did not reject any

10   of [the report's] conclusions").

11        Next, to the extent discernable, Plaintiff argues that (1) Dr. Allende "increased" Plaintiff's

12   lifting ability because she was "reticent about epidurals," and (2) the ALJ used "improper

13   rationale" in discrediting Plaintiff due to noncompliance with treatment.  (Doc. No. 18 at 19-21).

14   First, Plaintiff does not cite, nor does the Court discern, any lifting limitations opined by Dr.

15   Allende during the relevant adjudicatory period.  Similarly, Dr. Allende's January 2010 progress

16   report noting Plaintiff's decision not to pursue epidural steroid injections and her reasons for

17   declining the injection, is included in the ALJ's summary of the medical evidence as part of his

18   consideration of Plaintiff's symptom claims, but any "noncompliance" is not asserted in relation

19   to her report at the same treatment visit that she was returning to modified work duty.  (*See* AR

20   443 (noting Plaintiff decided not to undergo injections because she was "really concerned about

21   the possibility of having a spinal nerve injury as the result of the procedure so she declined"),

22   816); *Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision based on the reasoning and

23   factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

24   adjudicator may have been thinking.").

25        Based on the foregoing, the Court finds no error in the ALJ's consideration of Dr.

26   Allende's treatment records.  Regardless, the ALJ shall consider all relevant medical evidence on

27   remand, as directed below.

28   ////

1             **5.    Abel Quesada, M.D.**

2             In early 2012, Dr. Quesada completed several progress reports in the context of Plaintiff's

3    worker's compensation claim.  Plaintiff appears to argue that these reports include the opinion

4    that Plaintiff is limited to "no repetitive twisting of the head and neck and no repetitive overhead

5    use of the left upper extremity."  (Doc. No. 18 at 28 (citing AR 327, 624, 718, 2057, 2074)).

6    Presumably in support of this contention, Plaintiff generally cites Dr. Allende's February 2009

7    progress report (AR 327), Dr. MacClean's August 2010 "Orthopedic Agreed Medical Re-

8    examination" (AR 624), and Dr. Mendelsohn's December 2010 progress report, without

9    argument as to how these progress reports are referenced by Dr. Quesada in the 2012 progress

10   reports.  (Doc. No. 18 at 28).  As noted by Defendant, Dr. Quesada's reports do not opine any

11   specific functional limitations; rather, they appear to reference previous unidentified findings as

12   indicated by Dr. Quesada's handwritten notes "Per AME" and "Per P&S."  (Doc. No. 23 at 20;

13   AR 2058, 2061, 2074).  Thus, the ALJ did not err in failing to specifically discuss and provide

14   reasons for rejecting Dr. Quesada's "opinions" because a plain reading of his treatment records

15   indicates he did not assess any functional limitations. *See Turner*, 613 F.3d at 1223.

16            The Court finds no error in the ALJ's consideration of Dr. Quesada's progress reports.

17   Regardless, the ALJ shall consider all relevant medical evidence on remand, as directed below.

18             **6.    Miscellaneous Arguments**

19            First, the ALJ gave limited weight to the opinion of state agency reviewing physicians C.

20   De La Rosa, M.D. "due to its remote nature," and limited weight to the opinion of state agency

21   reviewing physician L. Bobba, M.D. "for the period prior to the established onset date as [it] is

22   not supported in respect to exertional capacities as the longitudinal record suggests that the

23   claimant retained patent strength and had no wasting upon examination."  (AR 821-22).  Plaintiff

24   does not assert any error as to the ALJ's evaluation of these opinions. *See Carmickle*, 533 F.3d at

25   1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing).

26   Rather, Plaintiff's sole contention is that the opinions are not included in the record.  (Doc. No. 18

27   at 28).  This argument is inapposite, as both opinions are available in the record as cited in the

28   ALJ's decision.  (AR 821-22 (citing AR 484-88, 1090-1129)).

Second, Plaintiff cites procedural history from this case, without additional argument, including the December 2013 state agency reviewing physician Keith Quint, M.D. adopting Dr. Mendelsohn's opinion (AR 1055), the SSA's application of *Chavez* to the 2011 determination in the January 2014 initial denial of benefits (AR 1073), and the July 2014 decision of the District Court and resulting Appeals Council order in December 2014 remanding to the Commissioner for further administrative proceedings and a new decision (AR 979-999). Plaintiff does not make any argument that the ALJ erred in considering Dr. Quint's opinion. Moreover, as noted by Defendant, the ALJ did not apply Chavez in the March 2024 decision at issue, nor does Plaintiff make any argument as such. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing).

**B. Remedy**

Plaintiff contends that the Court should remand for payment of benefits for the period before December 8, 2014. (Doc. No. 18 at 29-32). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. Courts have credited evidence and remanded for an award of benefits where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) the record has been fully developed and there are no outstanding issues that must be resolved before a disability determination can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-02 (9th Cir. 2014); *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017); *Garrison*, 759 F.3d at 1020 (citations omitted).

However, even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. Thus, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Plaintiff notes that she has been seeking benefits since September 24, 2009 and summarizes "long and tortured history of this case" including five determinations, five hearings, one District Court remand, and there Appeals Council findings. (Doc. No. 18 at 29-32). She argues the delay in the repeated remands in this case have become "unconscionable," and "if the [Court] credits even the ALJ's 2020 finding of sedentary with simple tasks, or the Dr. MacClean's finding of no twisting/rotation of the neck, a favorable determination is warranted." (*Id*. at 31-32). The Court is sympathetic to further delay in resolution of Plaintiff's disability status; however, this alone cannot provide a basis to award benefits. *See Treichler*, 775 F.3d at 1106. However, as argued by Defendant, Plaintiff "fails to specify how her case meets all the demanding requirements for such a drastic remedy." (Doc. No. 23 at 22); *see Marshall M. v. Comm'r Soc. Sec. Admin*., 2024 WL 2317386, at *9 (D. Or. May 22, 2024) ("Plaintiff has not meaningfully argued that remand for immediate benefits is appropriate."). In particular, while the Court has found that the ALJ failed to give legally sufficient reasons for rejecting several medical opinions, Plaintiff makes no argument specifically as to why there are no outstanding issues that must be resolved before a disability determination can be made. After reviewing the voluminous record as a whole, the Court cannot say that further administrative proceedings would serve no useful purpose, particularly in resolving conflicts and ambiguities in the medical opinion evidence throughout the adjudicatory period, and as needed to establish a precise date of disability, if warranted. *See Treichler*, 775 F.3d at 1103-04 (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose); *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (it is only "rare circumstances that result in a direct award of benefits"

21

and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial

evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

Thus, the Court finds that further administrative proceedings are appropriate. Here, the

ALJ improperly considered the medical opinion evidence, which calls into question whether the

assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by

substantial evidence. On remand, the ALJ is directed to reevaluate the medical opinions of

Robert Graham, M.D., Craig R. MacClean, M.D., and Peter Mendelsohn, M.D., as well as all

relevant medical evidence. The ALJ should conduct a new sequential analysis, reassess

Plaintiff's RFC and, only if necessary, take additional testimony from a vocational expert which

includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (Doc. No. 18) is GRANTED in part.

2.  Defendant's Cross-Motion for Summary Judgment (Doc. No. 23) is DENIED.

3.  Pursuant to sentence four of 42 U.S.C. § 405(g), the Court REVERSES the

    Commissioner's decision and REMANDS this case back to the Commissioner of

    Social Security for further proceedings consistent with this Order.

4.  An application for attorney fees may be filed by separate motion within thirty (30)

    days.

5.  The Clerk shall enter judgment in favor of the Plaintiff, terminate any pending

    motions/deadlines, and close this case.


Dated:    August 21, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE